UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CEDAR PETROCHEMICALS, INC. <br><br> Plaintiff, <br><br> v. <br><br> DONGBU HANNONG CHEMICAL CO., LTD. <br><br> Defendant. | 06 Civ. 3972 (LTS) |

**DEFENDANT DONGBU HANNONG CHEMICAL CO., LTD.'S
MEMORANDUM OF LAW IN SUPPORT OF MOTION TO STRIKE THE
DECLARATION OF MARTIN EAST AND THE GIJBELS AFFIDAVIT**

McDermott Will & Emery LLP
340 Madison Avenue
New York, New York 10173-1922

*Attorneys for Defendant Dongbu Hannong Chemical Co., Ltd.*

Defendant Dongbu Hannong Chemical Co., Ltd. ("Dongbu") hereby submits this memorandum of law in support of its motion to strike the declaration of Martin East submitted by Plaintiff Cedar Petrochemicals, Inc. ("Cedar") in support of its Motion for Summary Judgment, as well as the "Gijbels Affidavit" Cedar cited, but failed to serve and file, in its opposition to Dongbu's Motion for Imposition of Sanctions for Spoliation of Evidence.

## PRELIMINARY STATEMENT

As the Court is aware, the parties are involved in a contractual dispute concerning the sale of liquid phenol. Cedar contends Dongbu breached the parties' contract by failing to deliver phenol conforming to the "max-10" color specifications set forth in that contract. As further detailed in Dongbu's Memorandum of Law in Opposition to Cedar's Motion for Summary Judgment and in Further Support of Dongbu's Motion for Summary Judgment, Dongbu vigorously disputes this claim and, indeed, seeks summary judgment and dismissal of Cedar's unsupportable and specious claims. Dongbu now seeks to strike two of the affidavits Cedar cites in support of its Summary Judgment Motion, Opposition to Dongbu's Motion for Summary Judgment, and Opposition to Dongbu's Motion for Sanctions. Dongbu seeks to strike the Declaration of Martin East because it was not served in accordance with the Court's expert discovery deadlines and it provides testimony regarding matters that are outside the scope of Martin East's expert reports. Dongbu also seeks to strike the Gijbels Affidavit because it was never filed or served upon Dongbu.

As explained in Point I below, the Declaration of Martin East was submitted well after the close of expert discovery and is outside the scope of Mr. East's expert report. Cedar has had ample opportunity to disclose the scope and topics of its "expert" witnesses' proposed testimony. Despite these generous opportunities, through the Declaration of Martin East filed on September 13, 2010, Cedar now attempts to introduce <u>new</u> testimony well beyond the scope of Mr. East's expert reports. Cedar's expert reports only offered opinions as to the cause of the phenol's discoloration and where

the damage occurred, and it should not be permitted -- five months after the last deposition and over eight months since the official close of expert discovery -- to now introduce testimony regarding so-called "internationally agreed regimes" of inspection in the transport and shipment of petrochemicals.

As explained in Point II below, the proper sanction for Cedar's Rule 26 violation is preclusion of the Declaration of Martin East.

Finally, as explained in Point III below, Cedar has failed to file or serve the Gijbels Affidavit, as is required by Local Civil Rule 6.1. Because the affidavit was never filed or served, it should not be considered by the court.

## ARGUMENT

Rule 26(a) of the Federal Rules of Civil Procedure governs the disclosure of expert witnesses and the scope of their permissible opinions. *See* Fed. R. Civ. P. 26(a). Specifically, under Rule 26(a)(2)(A), a party must disclose "the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." *Id.* For each and every retained expert, Rule 26(a)(2)(B) further requires submission of a written report containing, among other things, "a complete statement of all opinions the witness will express and the basis and reasons for them [and] the data or other information considered by the witness in forming them . . . ." Fed. R. Civ. P 26(a)(2)(B). These disclosures, including any rebuttal or supplementation, must be made in accordance with the court ordered discovery schedule. Fed. R. Civ. P. 26(a)(2)(C); 26(e).

A party who fails to properly make these disclosures "is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Further, the court "may order payment of the reasonable expenses, including attorney's fees, caused by the failure; may inform

the jury of the party's failure; and may impose other appropriate sanctions . . ." *Id.* This rule applies when an expert's testimony exceeds the scope of his or her expert report. *Lamarca v. U.S.*, 31 F. Supp. 2d 110, 122 (E.D.N.Y. 1998) ("Expert testimony exceeding the bounds of the expert's report is excludable pursuant to Rule 37(c)(1).")

I.  **THE DECLARATION OF MARTIN EAST IS LATE AND OUTSIDE THE SCOPE OF HIS EXPERT REPORT.**

According to the initial pre-trial scheduling order issued by Judge Swain, discovery was to be completed by November 30, 2007. [DE #17.] After Cedar's First Amended Complaint was dismissed, Cedar was given leave to file a Second Amended Complaint, and, subsequently, Magistrate Judge Francis extended expert discovery to August 29, 2008. [DE #38.] On March 20, 2008, Magistrate Judge Francis granted Cedar leave to file a Third Amended Complaint including a second defendant. All discovery deadlines were extended an additional 120 days. [DE #39.] A year later, Magistrate Judge Francis issued another scheduling order that extended expert discovery until November 30, 2009. [DE #60.]

On or about June 23, 2009, Cedar served the Expert Report of Martin East ("East Report"). (Schiff Aff. Ex. 10.) This report addressed only his opinions regarding the possible causes of the phenol's discoloration. (*See* East Report ¶¶ 6.1-6.2 ("The cause of the colour degradation of this cargo of phenol cannot be stated with certainty. . . . I discuss the various possibilities in the following paragraphs.").) Mr. East was deposed July 16-17, 2009 regarding, among other things, the opinions he expressed in his report. After Mr. East had been deposed and it was clear that Mr. East's testimony would be inadmissible, Cedar announced it would be using an additional expert: Mr. East's supervisor, John Minton. Pursuant to an October 29, 2009 order by Magistrate Judge Francis, expert discovery was again extended until January 30, 2010, with expert depositions to be completed by February 28, 2010. [DE #61.] On or about February 2, 2010, Cedar served the

Report of John Minton, which, but for replacing Mr. East's curriculum vitae for Mr. Minton's, was a wholesale adoption of the East Report ("Minton Report"). This report also only addressed the possible causes of the phenol discoloration. By agreement of the parties and Magistrate Judge Francis, and as a result of Mr. Minton's unavailability, Mr. Minton's deposition took place May 3-4, 2010. Mr. Minton, like Mr. East, was deposed regarding, among other things, the opinions he expressed in his report. Under Rule 26, these reports had to constitute "a complete statement of all opinions the witness will express."[1]

On September 13, 2010, well after the close of expert discovery, Cedar submitted a Declaration of Martin East ("East Declaration") in support of its Motion for Summary Judgment. Unlike any of the prior "expert" reports, which addressed only the causes of discoloration, this declaration describes Mr. East's background and an elaborate inspection that is a protocol purported required by "internationally agreed regime[s]" of inspection. (*See generally* East Declaration.) Because the East Report did not disclose potential expert testimony regarding any "internationally agreed regimes" of inspection during the discovery period Mr. East's new testimony should be precluded.

Rule 26 requires expert testimony to be disclosed "in the sequence that the court orders." *See Loeffler v. Staten Island Univ. Hosp.*, No. 95 Civ. 4549, 2010 U.S. Dist. LEXIS 24274, *5 (E.D.N.Y. 2010). Consequently, Cedar's <u>belated</u> expert affidavit is no doubt in violation of the

---

[1] On or about June 7, 2010, Cedar served a 10-page supplement to the Minton Report entitled "The Discolouration of Phenol during Shipping and Storage," which Dongbu has also moved to strike in its Motion to Exclude the Testimony and the Expert Reports of Martin East and John Minton. Because the information in this report was similar to that provided in the earlier expert reports, it did not constitute a rebuttal, and Dongbu rejected this report as untimely in a letter dated June 8, 2010. (Affidavit of Michael R. Huttenlocher, dated Oct. 18, 2010 ("Hutt. Aff."), Ex. F.) Dongbu also has requested it be precluded as untimely in its recent *Daubert* motion. Like the East Report and Minton Report Cedar previously submitted, this report only addressed the possible causes of the discoloration of the phenol.

Rule 26 disclosure requirements. After several generous continuances, the court set the final deadline for the disclosure expert materials as June 25, 2010. The East Declaration with its new testimony was filed on September 13, 2010, *i.e.*, outside the final deadline for the disclosure of all expert testimony. Because the East Declaration is in violation of the Rule 26 requirements, the court should preclude the evidence as required by Rule 37.

Furthermore, there is no question that Cedar's "expert" reports only offer opinions as to the cause of the phenol discoloration. The entire discussion summary from both the East Report and the Minton Report is as follows:

> 6.  Discussion
>
> 6.1   The cause of the colour degradation of this cargo of phenol cannot be stated with certainty. What is known, from the joint analysis in Korea, is that whatever the external cause it arose between the phenol leaving the shore tank and prior to transhipment to the Bow Flora.
>
> 6.2   I have noted above that the presence of various metals (copper & iron) and water might start the colour degradation process. In addition, certain adverse conditions of storage are also known to cause the colour to darken, including exposure to light, air and excess temperature and excess temperature change. I discuss the various possibilities in the following paragraphs.

(East Report ¶¶ 6-6.2; Minton Report ¶¶ 6-6.2.) Nowhere does either report address any issue other than the possible causes of the discoloration.

In contrast, the East Declaration states, in pertinent part:

> 14.   Based on my experience on ships and as a surveyor, I can confirm that, when petrochemicals are shipped by sea, the buyers and sellers involved with the cargo will almost invariably employ an internationally recognized inspection company to monitor the quality of the cargos being shipped. These inspection companies will follow internationally agreement regimes on how their attendance should be conducted.
> . . .
>
> 26.   This inspection regime is invariably followed the world over in the shipment of petrochemicals.

(East Decl. ¶¶ 14, 26.)

- 5 -

Clearly, this new testimony introduced in the East Declaration in no way relates to the cause of the phenol discoloration at issue and must be precluded as outside the scope of his prior report. Given the close of expert discovery, Dongbu is left with no means of rebuttal. Indeed, the disclosure requirements in Rule 26 foresaw this dilemma and set strict guidelines for expert disclosures. *See Poulis-Minott v. Smith*, 388 F.3d 354, 358 (1st Cir. 2004) ("Rules 26(a) and 37(c)(1) seek to prevent the unfair tactical advantage that can be gained by failing to unveil an expert in a timely fashion"). Because the East Declaration is in flagrant violation of Rule 26, it cannot be accepted into evidence for purposes of the current pending actions and must be precluded.

## II. THE PROPER SANCTION UNDER RULE 37 FOR CEDAR'S RULE 26 VIOLATION IS PRECLUSION.

Courts in this Circuit consider four factors when deciding whether to impose Rule 37's exclusion sanction: "(1) the party's explanation for the delay in advancing the new evidence; (2) the importance of the precluded evidence; (3) the prejudice suffered by the opposing party; and (4) the possibility of a continuance." *Point Prods. A.G. v. Sony Music Entm't, Inc.*, No. 93 Civ. 4001, 2004 U.S. Dist. LEXIS 2676, at *31 (S.D.N.Y. Feb. 20, 2004) (*citing Outley v. City of New York*, 837 F.2d 587 (2d Cir. 1988)).

The four factors in *Point Productions* weigh heavily in support of precluding the East Declaration. First, Cedar has not offered any explanation for the delay in advancing this new evidence, and it cannot argue this new evidence is somehow a continuation of the "evidence" previously disclosed. This Court rejected a similar argument in *Point Productions*, stating, among other things "[t]o accept the contention that the new affidavits merely support an initial position when they in fact expound a wholly new and complex approach designed to fill a significant logical gap in the first report would eviscerate the purpose of the expert disclosure rules." *Point Prods.*,

2004 U.S. Dist. LEXIS 2676, at *31-32 (*citing In re Motel 6 Secs. Litig.*, 161 F. Supp. 2d 227, 243 (S.D.N.Y. 2001)).

Cedar also cannot argue that Dongbu had notice of this new testimony. In *Lamarca v. U.S.*, the court rejected the argument that the plaintiff had notice of the government's expert testimony that was not included in the expert report. *Lamarca*, 31 F. Supp. 2d at 122. In that case, the plaintiff sought compensation for pain and suffering, as well as damages for wrongful death, on behalf of her husband who died shortly after breaking his hip in a veteran's hospital. *Id.* at 116. Although the expert report in that case included opinions on the medical acceptability of not operating on the decedent's hip fracture and on the proximate cause of the decedent's death, the report did not offer an opinion as to the cause of the decedent's hip fracture. *Id.* at 122. Consequently, the court held that "[t]he report, therefore, did not put plaintiff on notice that [the government's expert] would testify about his opinion as to the cause of the hip fracture." *Id.* As a result, the testimony regarding the cause of the fracture was excluded. *Id.* at 123. A similar result should happen here because Cedar's expert reports did not put Dongbu on notice that Mr. East would testify as to any "internationally agreed regimes" of the inspection of petrochemicals. Cedar simply cannot now submit such testimony.

Further, Cedar cannot argue that this declaration responds to new issues raised by Dongbu, as the Rule 26(a)(2)(B) disclosure requirement also applies to rebuttal testimony. In *In re Kreta Shipping S.A.*, this Court rejected the argument that rebuttal evidence is exempt from the Rule 26(a)(2)(B) timely disclosure requirement. 181 F.R.D. 273, 276 (S.D.N.Y. 1998). The court stated, "if expert testimony contradicting another expert's analysis were exempt from Rule 26(a)(2)(B)'s stringent disclosure requirements, in many cases parties would have no incentive to file rebuttal reports." *Id.* Indeed, the issue of the inspection process has been part of this matter since the very

beginning, and if expert testimony was going to address this, it should have been done long ago. Cedar's conduct is inexcusable.

Second, this information is not central to Cedar's claims. If it was, Cedar no doubt would have included it in one of the three reports previously submitted. Instead, these "inspection regimes" are irrelevant and only cloud the real issues at hand. Cedar has a written contract that was fully performed by Dongbu. This irrelevant evidence about testing regimes is simply a belated attempt to bolster Cedar's arguments regarding the applicability of CISG, which does not apply.[2]

Third, allowing this declaration to be considered would place significant new discovery burdens on Dongbu. Mr. East would have to be re-deposed, a significant burden since he is located in London. Also, Dongbu would have to seek new documents from the two inspection companies and possibly depose witnesses having knowledge of the inspection that occurred five years ago. Further, Dongbu would have to retain its own expert to rebut Mr. East's characterization of these supposed "internationally agreed regimes," which would require further expert disclosures and depositions.

Finally, exclusion is appropriate in this instance, rather than yet another continuance. As this court held in *Point Productions*, "[a party's expert] holds an affirmative obligation, at the risk of preclusion, to disclose in an expert report and upon examination in deposition to declare all the sources and assumptions on which his methods and conclusions are based." 2004 U.S. Dist. LEXIS 2676 at *43 (*citing* Fed. R. Civ. P. 26(a), 37(c)). Cedar was afforded several continuances already and yet another is not warranted to support Cedar's constantly evolving theories. Now, Dongbu is

---

[2] For further discussion of these arguments, we respectfully refer the Court to Dongbu's Memorandum of Law in Opposition to Cedar's Motion for Summary Judgment in Further Support of Dongbu's Motion for Summary Judgment.

entitled to challenge Cedar's expert as the record stood at the close of discovery, and Cedar should not be able to fill in the flaws and gaps in its experts' reports as Dongbu identifies them. *Id.*

As demonstrated above, all four factors support the exclusion of the East Declaration pursuant to Rule 37(c).

### III.  THE GIJBELS AFFIDAVIT MUST BE STRICKEN.

Dongbu also requests that the Gijbels Affidavit be stricken as well, as it was not filed or served with Cedar's motion papers. Local Civil Rule 6.1 states, in pertinent part, "any opposing affidavits and answering memoranda shall be served within fourteen days after service of the moving papers." S.D.N.Y. Civ. R. 6.1. Because the Gijbels Affidavit was never filed or served, it is in violation of this rule and should not be considered by the court.

### CONCLUSION

For all of the foregoing reasons, Dongbu respectfully requests that its motion be granted in its entirety and Cedar's Declaration of Martin East be excluded.

Dated: October 18, 2010

Respectfully submitted,

McDERMOTT WILL & EMERY LLP

By: _____
Robert A. Weiner
Michael R. Huttenlocher
340 Madison Ave.
New York, New York  10173-1922
(212) 547-5400

*Attorneys for Defendant Dongbu Hannong Chemical Co., Ltd.*

NYK 1349620-6.068134.0012